UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RICHARD GOETTLE, INC.** | : | |
| 12071 Hamilton Avenue | : | Case No.: |
| Cincinnati, Ohio 45231 | : | |
| | : | |
|     **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **ASTRA GROUP, INC.** | : | |
| **300 Churchill Court** | : | |
| **Woodstock, Georgia 30188** | : | |
| | : | |
|     **Defendants** | : | |
| | : | |
| Also Serve | : | |
| C T Corporation System | : | |
| 289 S Culver St., | : | |
| Lawrenceville, GA, 30046-4805 | : | |

**COMPLAINT**

Plaintiff Richard Goettle, Inc., for its Complaint against the Defendants, states as follows:

1. Plaintiff Richard Goettle, Inc. ("Goettle") is a corporation organized under the laws of the state of Ohio with its principal place of business in Cincinnati, Ohio and authorized to do business in the State of Georgia.

2. Defendant Astra Group, Inc. ("Astra") is a corporation organized under the laws of the state of Georgia with its principal place of business located at 300 Churchill Ct., Woodstock, Georgia 30188. The Registered Agent for Astra is C T Corporation System, 289 S Culver St., Lawrenceville, GA, 30046-4805.

3. Goettle is engaged in commercial construction, specifically as a specialty subcontractor is design build engineering, deep foundation systems, earth retention, and other related services.

4. Astra is also engaged in commercial construction and regularly conducts business in the state of Ohio.

5. Goettle entered into a subcontract agreement with Astra pertaining to a construction project known as Georgia Ports Authority IMMC 2 & 3. Goettle served as subcontractor to Astra. Goettle's work under the subcontract included pile driving and deep foundation construction. A draft written agreement was exchanged, but for unknown reasons Astra failed to execute and return the written subcontract to Goettle. Thus, the parties proceeded with an implied in fact contract or verbal agreement under which Goettle completed its work and was paid as set forth herein.

6. Goettle performed its work under the subcontract and completed all work required under the subcontract in a good and workmanlike manner

7. Goettle submitted various pay applications throughout the project and was paid in full, less 10% retainage, for each pay application.

8. Goettle submitted an invoice for work through January 2019 in the amount of $570,247.29 and was compensated for such invoice in full on or about April 3, 2019.

9. Goettle submitted an invoice for work through February 2019 in the amount of $473,714.37 and was compensated for such invoice in full or on about May 6, 2019.

10. Goettle submitted an invoice for work through March 2019 in the amount of $355,484.25 and was compensated for such invoice in full or on about June 18, 2019.

11. Goettle submitted an invoice for work through April 2019 in the amount of $415,037.70 and was compensated for such invoice in full or on about July 5, 2019.

12. Goettle submitted an invoice for work through October 2019 in the amount of $93,357.90 and was compensated for such invoice in full or on about January 13, 2020.

13. Astra issued no withholdings or backcharges or notices of deficiency or notice of charges to Goettle at any point in time prior to January 13, 2020.

14. Goettle submitted an invoice for work through August 2020 in the amount of $354,768.75 and was compensated for such invoice in full or on about October 20, 2020.

15. Goettle submitted an invoice for work through September 2020 in the amount of $112,158.00 and was compensated for such invoice in full or on about November 5, 2020.

16. Goettle submitted an invoice for work through October 2020 in the amount of $321,092.64 and was compensated for such invoice in full or on about December 26, 2020.

17. Goettle submitted an invoice for work through November 2020 in the amount of $269,866.08 and was compensated for such invoice in full or on about January 26, 2021.

18.  Astra issued no withholdings or backcharges or notices of deficiency or notice of charges to Goettle at any point in time prior to January 26, 2021.

19. Goettle submitted an invoice for work through December 2020 in the amount of $283,646.88 and was compensated for such invoice in full or on about February 15, 2021.

20. Goettle submitted an invoice for work through January 2021 in the amount of $130,155.84 and was compensated for such invoice in full or on about April 6, 2021.

21. Astra issued no withholdings or backcharges or notices of deficiency or notice of charges to Goettle at any point in time.

22. Goettle submitted an invoice for work through February 2021 in the amount of $79,585.20.

23. Upon receipt of the February 2021 invoice, Astra did not advise Goettle that Astra intended to backcharge Goettle or issue any withholdings to Goettle, nor did Astra issue any notices of deficiency or notice of charges to Goettle.

24. Goettle substantially completed its work on the project in early February 2021 and briefly returned to the project on April 19-20, 2021.

25. Goettle submitted an invoice for $384,346.10 for retention balance on July 30, 2021.

26. Upon receipt of the retention invoice, Astra did not advise Goettle that Astra intended to backcharge Goettle or issue any withholdings to Goettle, nor did Astra issue any notices of deficiency or notice of charges to Goettle.

27. Goettle made inquiries regarding payment status for the aforementioned outstanding pay applications and retainage on or about August 20, 2021 and again on August 31, 2021 and again on October 12, 2021.

28. Having received no explanation regarding its payment inquiries, Goettle sent a formal demand letter on October 19, 2021, wherein Goettle demanded payment in full for the outstanding balance of $463,931.30.

29. On November 12, 2021, Goettle received a letter from Andrew Lindsay, President of Astra Group, Inc., alleging, for the first time, that "numerous pilings" were out of tolerance. However, no specific piles were identified. The letter further alleged that Astra somehow incurred costs that "exceed $443,00" as a result of remediating the unidentified pilings, but provided no supporting information regarding the alleged cost.

30. To date, Astra has not provided any information to support its assertion that some undisclosed number of pilings were out of tolerance. Astra did not and has not to date

provided any information to support its assertion that it has incurred costs of any amount due to the alleged out of tolerance pilings, much less costs that "exceed $443,000".

31. Astra claimed in its November 12, 2021 letter that Goettle was informed of out of tolerance pilings in "early August 2019".

32. Quite the contrary, Goettle advised Astra of out of tolerance piles months prior to August of 2019. On April 30, 2019 Goettle submitted an RFI asking if certain potentially out of tolerance piles could be accepted as installed, a common practice in the industry. (**Exhibit A**) On May 29, 2019, after additional surveying was completed, Goettle submitted an RFI again inquiring about certain potentially out of tolerance piles. (**Exhibit B**) Moffat & Nichol, the owner's engineer responded to and closed the aforementioned RFI's on or about June 4, 2019, as follows: "This will need to be handled in the field on a case by case basis once the crane beam has been laid out on the mud slab." (**Exhibit C**)

33. In August 2019, Astra conducted field measurements on the piles. On August 16, 2019, Goettle requested that the project surveyor re-survey the piles at issue. In September 2019, the project surveyor, Atlas, completed an additional survey which provided different results and information from the prior field measurements taken by Astra. This later surveying information from Atlas showed piles significantly less out of tolerance than previously indicated by Astra's field measurements. Astra advised Goettle they would submit an RFI regarding the piles in light of the information from this additional survey.

34. Goettle communicated with Astra multiple times in October of 2019 regarding the Work, but Goettle was never informed of a backcharge or withholding or given any direction regarding any remediation. Astra never requested that Goettle drive additional piles or

conduct any other remediation. Astra did not advise Goettle that remediation was necessary.

35. After advising Goettle it would submit the aforementioned RFI, Astra made no requests for Goettle to remediate, fix, or repair any single pile. Astra provided no notice of any backcharge for any allegedly out of tolerance pile, and has, to date, provided no information to support its current allegations regarding any out of tolerance piles.

36. Additionally, as set forth above, Astra paid, in full, every invoice Goettle sent to Astra, including after August 2019, up until February 2021. At no point after August 2019 did Astra send Goettle any notice of contractual withholding or backcharge. In fact, since August of 2019, Astra has paid Goettle no less than $1,565,046. In that same timeframe, up until February of 2021, Astra paid all Goettle invoices in full, without dispute, or any alleged withholding or backcharge. Furthermore, Goettle was consistently on the Project from August 2020 through February 2021.

37. Astra did not advise Goettle of any alleged withholding or backcharge until after Goettle sent a formal demand letter to obtain final payment for the Project.

38. Astra's current refusal to pay and assertion of a withholding is neither credible nor made in good faith. No reasonable general contractor would wait approximately 2 years and 3 months before informing a subcontractor of an alleged backcharge for out of tolerance piles. Furthermore, Astra is currently asserting backcharges against Goettle for which Astra has provided no evidence and no supporting information. Furthermore, by delaying notice to Goettle of the alleged backcharge, Astra effectively forfeited Goettle's bond claim rights on the Project at issue.

39. Furthermore, any delay costs incurred by Astra were due to delays caused by the Work of the surveying entities or Astra itself.

40. Goettle personnel have been informed by Astra personnel that there was an issue with surveying which led to delays on the project.

41. The parties attempted to discuss the alleged backcharges on November 17, 2021 but were unsuccessful in reaching any resolution.

42. All contract negotiations occurred out of Goettle's office in Hamilton County, Ohio.

43. Goettle performed considerable work from its office in Hamilton County, Ohio including project design, project coordination, and conducting operations and logistics for the Project.

44. All payments made by Astra were sent to Goettle's office in Hamilton County, Ohio.

45. Astra knew at all relevant times that by failing to compensate Goettle for its final payment application and retainage payment, according to their agreement, and in light of Astra's other contacts with the state of Ohio, Astra should reasonably expect to be haled into Court in Ohio.

## COUNT I

46. Goettle re-alleges, as if fully rewritten, all the above paragraphs of this Complaint.

47. Goettle and Astra entered into an implied in fact or verbal agreement whereby Goettle worked as a subcontractor on construction projects known as Georgia Ports Authority IMMC 2 & 3.

48. Astra did not return an executed written contract to Goettle.

49. Goettle completed its work under the agreement and received several interim payments for such work, but an outstanding balance remains.

50. Goettle has made demand upon Astra for payment for the full balance due under the agreement. For reasons wholly unsupported by evidence, Astra has refused to pay Goettle the outstanding balance of $463,931.30.

51. Despite demand, Astra has refused to pay and is in breach of its agreement with Goettle.

52. As a result of such breach, Goettle has suffered damages in the amount of $463,931.30, plus lawful interest and legal fees as a result of Astra's breach and bad faith.

## COUNT II

53. Goettle re-alleges, as if fully rewritten, all the above paragraphs of this Complaint.

54. Goettle provided labor, materials, equipment, and services to the project at the request of Astra.

55. Astra accepted Goettle's work and benefitted from Goettle's work.

56. Astra understood and knew that Goettle expected to be paid, in full, for the labor, materials, equipment and services that Goettle provided to the Project.

57. The value of the unpaid portion of the labor, materials, equipment, and services provided by Goettle for the benefit of Astra is $463,931.30.

58. Under the legal doctrines of unjust enrichment and quantum meruit, Goettle is entitled to payment in full from Astra and it would be unjust and inequitable for Astra to retain the benefit of Goettle's work on the Project without paying Goettle in full for its work on the Project.

59. As a result of Astra's refusal to pay, Goettle has suffered damages in the amount of the outstanding balance of $463,931.30., plus lawful interest and legal fees.

WHEREFORE, Plaintiff Richard Goettle, Inc. prays for judgment in its favor against Astra, jointly and severally, under all Counts in the amount of $463,931.30 for its work on the Project,

plus lawful interest, attorney's fees, Court costs, and all other relief as is proper under the circumstances.

        Respectfully submitted,

        */s/ Luke J. Busam*
        Luke J. Busam (OH 0082339)
        Richard Goettle, Inc.
        12071 Hamilton Avenue
        Cincinnati, Ohio 45231